UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS § | CRIMINAL NO. H-10-389 |
| § | |
| AGAR CORPORATION, INC. § | |
| (Incorporated under the laws of § | |
| Texas) § | |

## PLEA AGREEMENT

The United States of America, by and through, José Angel Moreno, United States Attorney for the Southern District of Texas, and Melissa Annis, Assistant United States Attorney, and defendant, Agar Corporation, Inc., and defendant's counsel pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

## TERMS OF THE AGREEMENT

1.  The defendant agrees to give up the right to be indicted by a grand jury and agrees to plead guilty to Count One of the Criminal Information (hereinafter "Information") in this case and to persist with that plea.

    a. The defendant agrees that this Agreement will be executed by an authorized representative. Defendant further agrees that a Resolution duly adopted by the Board of Directors of AGAR CORPORATION, INC., attached to this agreement as Exhibit 1, represents that the signatures on this Agreement by AGAR

1

CORPORATION, INC whom are authorized by AGAR CORPORATION, INC's Board of Directors.

      b. The defendant further agrees to pay to the United States a criminal fine in the amount of $760,000.00. Further, defendant admits it obtained $380,000.00 in proceeds from its violation of 50 U.S.C. §1701-1706 as charged in the Criminal Information. Defendant agrees to forfeit to the United States the sum of $380,000.00 and agrees to a money judgment for the forfeiture of $380,000.00 in favor of the United States and against the Defendant. Defendant agrees to wire transfer to the United States $250,000.00 immediately following re-arraignment and pay the balance due in monthly installments. Defendant understands the forfeiture is in addition to any fine or restitution that may be imposed by the Court and consents to the order of forfeiture becoming final as to the Defendant immediately following this guilty plea pursuant to Fed.R.Crim. P. 32.2(b)(4).

      c. The defendant consents to and joins in any motion, agreed order of forfeiture, or judgment, and agrees to execute all documents necessary to accomplish the purposes contemplated by this provision.

      d. The defendant also agrees, in addition, to immediately pay civil penalties to the United States in the amount of $860,000.00 executed through a written settlement agreement with the Office of Foreign Assets Control (hereinafter OFAC), United States Department of Treasury.

      e. The defendant agrees, along with the United States, that all money due and owing the United States as a result of this criminal prosecution and

the civil settlement with OFAC shall be paid as follows:

    1.    On the date of re-arraignment, the Defendant will pay into the registry of the court $250,000.00 to be applied against the $380,000.00 criminal forfeiture; and

    2.    The balance of $1,750,000.00 will be paid in monthly installments of at least $36,458.34 a month into the registry of the court until the balance is paid in full. Defendant agrees payments will be timely made when received by the United States by the first day of the month, with the first payment due August 1, 2010.

Defendant agrees to sign a promissory note payable to the United States of America in the principal amount of $1,750,000. Defendant further agrees to secure the payment of the criminal fine, forfeiture, and civil penalties, with the real property owned by the defendant, with improvements and appurtenances, located at 5150 Tacoma Dr., Houston, Texas 77041. Defendant agrees to execute a Deed of Trust to be filed in the real property records of the Harris County, Texas. Defendant specifically waives all notices that may be due under Texas law to the fullest extent permitted by law, including, but not limited to, demands for payment, notice of default, notice of intention to accelerate, protest, and notice of protest.

    f. The defendant agrees to institute a compliance program specifically designed to ensure no further violations of United States law will

occur. The compliance program will provide for training of all employees, including contract employees on a periodic basis as well as written updated compliance guidelines. As part of the compliance program, the defendant agrees to prepare a presentation outlining in detail the prohibited activities engaged in by the defendant in the charged conduct. Defendant further agrees to provide a true and correct copy of that program to the United States within 90 days of executing this agreement.

      g. The defendant agrees to hire an unaffiliated third-party consultant with expertise in U.S. export control laws and sanctions regulations to conduct external audits, of Agar Corporation Inc.'s compliance with U.S. export control laws and sanctions regulations with respect to all exports or re-exports to sanctioned countries subject to the Export Administration Regulations (EAR) or to the Office of Foreign Assets Control (OFAC) regulations or both. Annual calendar year audits shall be conducted for 2010 and 2011. Said audits shall be in substantial compliance with the requirements set out in the Export Management and Compliance Program audit module, which is available at http://www.bis.doc.gov/complianceandenforcement/emcp_audit.pdf, and shall include an assessment of Agar Corporation Inc.'s compliance with OFAC Regulations and the EAR. In addition, where said audit identifies actual or potential violations of the EAR or OFAC Regulations, Agar Corporation Inc. must promptly provide copies of the pertinent air waybills, shipping documents and other supporting documentation to OFAC. Agar Corporation Inc. will send

complete copies of the audit reports and accompanying airway bills, shipping documents and other documentation to Office of Foreign Assests Control, Special Investigations Section, U.S. Department of the Treasury, 1500 Pennsylvania Ave., NW, Washington, D.C. 20220 by January 31st of the year following the time period for which the audit was conducted.

      h. The defendant agrees to fully cooperate with federal law enforcement and the United States Attorney's Office during the pendency of any probationary period imposed at sentencing.

      2. Count One, in pertinent part, charges the defendant with violating the International Emergency Economic Powers Act (Title 50, United States Code, Section 1701-1706).

      3. In exchange for the defendant's plea of guilty to the Criminal Information in this case as well as the defendant's agreements outlined in paragraph one of this written plea agreement, the United States agrees to recommend the Court impose a fine of $760,000.00, and impose a period of probation of 4 years during which the defendant will fulfill the terms of the agreement set out in paragraph 1(b)-(h). United States Attorney for the Southern District of Texas will not file additional charges in connection with the conduct giving rise to this plea agreement against any former or current directors, officers or employees of Agar Corporation Inc.

## PENALTY

      4. The penalty for a violation of Title 50, United States Code,

Section 1705 includes a possible period of probation from one year to ten years, a fine of up to twice the gross gain or loss resulting from the offense (in this case up to $760,000), and a $400 Mandatory Special Assessment per count of conviction. Title 18, United States Code, Sections 3551(c), 3561, 3571(d), and 3013(a)(2)(B).

 a. The defendant hereby stipulates and agrees not to institute or participate in any proceeding to interfere with, alter, or bar enforcement of any fine, penalty, special assessment or forfeiture order pursuant to the automatic stay or other provision of the United States Bankruptcy Code.

 b. The defendant agrees that nothing in this plea agreement is intended to release the defendant from any and all of the defendant's excise and income tax liabilities and reporting obligations for any and all income not properly reported and/or legally or illegally obtained or derived.

## WAIVERS

 5. The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Knowing that, the defendant waives the right to appeal the plea, conviction and sentence (or the manner in which it was determined) on the grounds set forth in Title 18, United States Code, Section 3742. This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b).

 6. The defendant is also aware that the United States Constitution and the laws of the United States, including Title 28, United States Code, Section

6

2255, afford the defendant the right to contest or "collaterally attack" its conviction or sentence after the conviction has become final. Knowing that, the defendant knowingly waives the right to contest or "collaterally attack" the defendant's plea, conviction and sentence by means of any post-conviction proceeding.

7. Defendant waives all defenses based on venue, speedy trial under the United States Constitution and Speedy Trial Act, and the statute of limitations, in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn. Further the defendant waives any and all constitutional and non-jurisdictional defects.

8. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and the defendant; it does not bind any other United States Attorney or governmental agency. The only parties to this agreement are the United States Attorney for the Southern District of Texas and Agar Corporation, Inc.

### RIGHTS AT TRIAL

9. The defendant represents to the Court that defendant is satisfied that the defendant's attorney has rendered effective assistance. Defendant understands that by entering into this Agreement, the defendant surrenders certain rights as provided in this Agreement. Defendant understands that the rights of defendants include the following:

7

a. If the defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States and the court all agree.

b. At a trial, the United States would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those witnesses and the defendant's attorney would be able to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

c. At a trial, the defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, he could testify on his own behalf.

10. The defendant understands that nothing in this plea agreement will restrict access by the United States Probation Office or the Court to information and records in the possession of the United States or any of its investigative law enforcement agencies, including State and local law enforcement agencies, as well as information, documents and records obtained from the defendant.

## BREACH OF THE PLEA AGREEMENT

11. If the defendant should fail in any way to fulfill completely all of the

8

obligations under this plea agreement, the United States will be released from its obligations under the plea agreement.

12. It is understood by the defendant and the United States that should the defendant fail to comply with any of the obligations set forth in this agreement or violate any of the terms or conditions set forth in this agreement or engages in any criminal activity through sentencing, the United States shall be released from its obligations under this agreement, yet the defendant's plea and sentence will stand and the Southern District of Texas may institute or re-institute prosecution including but not limited to enhancement of the sentence and may prosecute the defendant for any and all violations of Federal law which the defendant may have committed. For purposes of this paragraph, the defendant waives any statute of limitations that may apply to any such Federal offenses or counts. Whether the defendant has breached any provision of this plea agreement shall be determined by the United States.

## FACTUAL BASIS

13. Should the defendant proceed to trial, the following facts among others would be proven beyond a reasonable doubt:

During 2004 through the date of the Criminal Information, **AGAR CORPORATION, INC.**, was a Texas corporation with its principal place of business in Houston, Texas, and engaged in the business of designing, manufacturing and supplying Multi-phase Flow Meters (MPFM) and its consumable parts, used *inter alia* in the oil and gas industry. Many of the

MPFM's component parts were proprietary. Joram Agar was the President of **AGAR CORPORATION, INC. AGAR CORPORATION, INC.** had a number of foreign affiliates, referred to collectively as Agar Companies. Joram Agar owned a percentage of the Malaysian sales company, AgarCorp Sendirian Berhad (hereinafter ACSB) and was president of the Venezuelan sales and service company, Agarcorp de Venezuela (hereinafter ADV).

In 2004, the Government of Sudan awarded China Petroleum Engineering and Construction Company ("CPECC") a contract to design and build an oil production facility in Sudan in the Melut Basin. In order to design and build the facility, CPECC needed to procure 14 MPFMs. MPFMs provide real time measurements of oil, water and gas flows in the field. In addition, Ranhill International, Inc. and Dodsal PTE, Ltd. also obtained contracts to participate in the Melut Basin Project in Sudan.

In August 2004, CPECC invited Joram Agar to submit a competitive bid for MPFM meter skids for the Melut Basin Oil Development Project in Sudan. CPECC ultimately entered into an agreement to purchase 14 MPFMs from ACSB.

The Agar Companies worked in concert with regard to sales, service, design, engineering, development, and procurement for MPFMs and their component parts. Many of the component parts of the MPFM were proprietary to **AGAR CORPORATION, INC. AGAR CORPORATION, INC.** in Houston functioned as the corporate headquarters for the Agar Companies. The Agar Companies were dependent on **AGAR CORPORATION, INC.** for accounting,

quotation research, purchasing, manufacturing, design and engineering. All the Agar Companies went to **AGAR CORPORATION, INC.** to receive price quotes. Further, **AGAR CORPORATION, INC.** was traditionally the location through which parts needed to assemble the MPFMs were purchased and the location from which the MPFMs were assembled and shipped.

Recognizing that **AGAR CORPORATION, INC.** was prohibited under Executive Order 13067, signed by President William Jefferson Clinton on November 3, 1997, and continuously extended each subsequent year by the President of the United States, from transacting directly or indirectly with Sudan, **AGAR CORPORATION, INC.** arraigned for its sister company in Venezuela, ADV, to fill the order for the 14 MPFMs ordered by CPECC as well as the orders from Ranhill International, Inc. and Dodsel, PTE, Ltd. through a contract employee.

Although it was made to appear that ADV alone was building and exporting the MPFMs to Sudan, **AGAR CORPORATION, INC.** still provided assistance and technical support for the design and construction of the MPFMs. and **AGAR CORPORATION, INC.** sold and caused to be shipped to ADV from the United States certain component parts needed for the manufacture of the MPFMs.

In addition to filling CPECC's order for 14 MPFMs for end use in Sudan, ADV also filled an order for Dodsal PTE, Ltd. for one MPFM and for Ranhill International, Inc. for one MPFM, both of which were built for end use in an oil field in Sudan. In total, 16 MPFMs were built and shipped by ADV for end use in

Sudan with the help and assistance of **AGAR CORPORATION, INC.**

**AGAR CORPORATION, INC.** assisted ADV in purchasing MPFM component parts from **AGAR CORPORATION, INC.**'s United States suppliers and fabricators by acting in a coordination capacity between ADV and the U.S. suppliers and fabricators. **AGAR CORPORATION, INC.** also assisted ADV with the engineering drawings needed to procure the parts from the U.S. fabricators and to assemble the various parts into the 16 MPFMs destined for Sudan. In addition, **AGAR CORPORATION, INC.** helped with the arrangements for the letters of credit for MPFMs purchased by CPECC and Ranhill International, Inc. **AGAR CORPORATION, INC.** exported seven shipments of the component parts ordered from the United States vendors from the United States to ADV in Venezuela on or about April 22; May 9, 13 and 27; and June 3 and 27, 2005. These shipments originated in Houston, Texas prior to their export to Venezuela. **AGAR CORPORATION, INC.** was aware that ADV would incorporate these parts into MPFMs for export to Sudan.

**AGAR CORPORATION, INC.** also sold MPFM proprietary components directly to ADV for the Melut Basin Project. Beginning in or about June 2005, the proprietary components were shipped by **AGAR CORPORATION, INC.**, or under their direction, from Houston, Texas through Miami, Florida to ADV in Venezuela so these parts could be assembled with the other components exported by United States vendors. Once ADV completed the assembly of the MPFMs and concluded all necessary testing of the completed MPFM, the assembled parts were

re-exported to the Republic of Sudan for use in Melut Basin project.

On or about August 12, 2005, ADV shipped one MPFM from Venezuela to Khartoum, Republic of Sudan to fulfill the order from Dodsal PTE, Ltd. for the Melut Basin project. In or about August and September 2005, ADV shipped 14 MPFMs from Venezuela to Sudan to fulfill the CPECC order for the Melut Basin project. On or about December 7, 2005, ADV shipped a MPFM from Venezuela to Khartoum, Republic of Sudan to complete the transaction with Ranhill International, Ltd. for the Melut Basin project. The profit to the Agar Companies from the export of the MPFMs to Sudan was at least $380,000.

The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1707, authorized the President of the United States ("the President") to impose economic sanctions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy or economy of the United States when the President declares a national emergency with respect to that threat.

On November 3, 1997, the President of the United States signed Executive Order 13067 finding that "the policies and actions of the Government of Sudan, including continued support for international terrorism; ongoing efforts to destabilize neighboring governments; and the prevalence of human rights violations, including slavery and the denial of religious freedom, constitute an unusual and extraordinary threat to the national security and foreign policy of the United States", and declared a national emergency to deal with that threat.

Executive Order 13067 has been continued by the President of the United States each successive year and was in effect at all times relevant to the charges in this case.

Executive Order 13067 imposed economic sanctions, including a trade embargo, on Sudan. The Executive Order prohibited, among other things transactions with Sudan. Specifically, the Executive Order prohibited the exportation or re-exportation, directly or indirectly, to Sudan of any goods, technology (including technical data, software, or other information), or services from the United States or by a United States person, wherever located, or requiring the issuance of a license by a Federal agency, except for donations of articles intended to relieve human suffering, such as food, clothing, and medicine. The Executive Order specifically prohibits the facilitation by a United States person, including but not limited to brokering activities, of the exportation or re-exportation of goods, technology, or services to Sudan from any location. The Executive Order's definition of a "U.S. person" includes a corporation organized under the laws of the United States (including foreign branches).

**AGAR CORPORATION, INC.**'s assistance to and facilitation of its foreign affiliate, ADV, in the manufacturing MPFMs for the purpose of exporting them to Sudan was subject to the Sudan Sanctions Regulations.

The United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), located in the District of Columbia, had responsibility for administering the Sudan Sanctions Regulations, and was the entity empowered to

granted, would be in the form of a license. No license was obtained by **AGAR CORPORATION, INC.**

14. This written agreement constitutes the complete plea agreement between the United States, the defendant, and the defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. The defendant acknowledges that no threats have been made against the defendant and that the defendant is pleading guilty freely and voluntarily because the defendant is guilty. Any modification of this plea agreement shall be valid only as set forth in writing in a supplemental or revised plea agreement signed by all parties.

Executed on this the __22__ day of June, 2010.

*AGAR CORP INC*
AGAR CORPORATION INC.
Signed by David Farchy with Approval of the Board of Directors (Exhibit 1)
*by David Farchy*

SUBSCRIBED AND SWORN TO BEFORE ME on this the __22nd__ day of June, 2010.

DAVID J. BRADLEY, Clerk

By: _____
Deputy Clerk

APPROVED:
JOSE ANGEL MORENO
UNITED STATES ATTORNEY

_____  _____
Melissa Annis                            Jim Lavine
Assistant United States Attorney         Attorney for the Defendant

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| VS | § § | CRIMINAL NO. H-10-389 |
| AGAR CORPORATION, INC. (Incorporated under the laws of Texas) | § § § § | |

I, Jim Lavine, have explained to the Defendant Agar Corporation, Inc. its rights with respect to the pending Information. I have informed the Defendant that the <u>Sentencing Guidelines and Policy Statement</u> have been deemed as "advisory" to the court pursuant to <u>Booker</u>. Further, I have reviewed the provisions of the <u>Sentencing Guidelines and Policy Statements</u> and I have fully explained to the Defendant the provisions of those guidelines which may apply in the case. I have carefully reviewed every part of the plea agreement with the Defendant. To my knowledge, the Defendant's decision to enter into this agreement is an informed and voluntary one.

_____        _____June 22, 2010_____
Counsel for the Defendant                Date

## CONSENT OF
## BOARD OF DIRECTORS
## IN LIEU OF SPECIAL MEETING
## AGAR CORPORATION, INC.

June 9th, 2010

Pursuant to Section 6.201 of the Texas Business Organizations Code, as amended, the undersigned Directors, being all of the Directors of the above-named Texas corporation (the "Corporation"), and being all of the Directors entitled to vote with respect to the subject matter comprising this Consent, do, without a Directors meeting, duly consent to the following corporate actions and do hereby agree that this Consent shall bind the Corporation and all of the Directors signing the same.

### PLEA AGREEMENT

BE IT RESOLVED: that the Corporation is authorized to enter into and fully comply with the requirements of that certain plea agreement (the "Plea Agreement") between the Corporation and the United States of America, to be entered in *The United States of America vs. Agar Corporation, Inc.*, pending before the United States District Court for the Southern District of Texas, a true and correct copy of which is attached hereto as Exhibit A.

### OFAC AGREEMENT

BE IT RESOLVED: that the Corporation is authorized to enter into and fully comply with the requirements of any agreement between the Corporation and the Office of Foreign Asset Control of the United States Treasury Department (the "OFAC Agreement") to resolve the issues between them that are related to the subject matter of the Plea Agreement.

### AUTHORIZED SIGNATORY

BE IT RESOLVED: that the Corporation's Vice President, David Farchi, is authorized to sign the Plea Agreement and the OFAC Agreement on behalf of the Corporation and to sign any other documents and to cause the Corporation to take all actions required in connection therewith.

EXECUTED as of the date first set forth above.

_____
YAELL AGAR, Director

_____
JO AGAR, Director

_____
DAVID FARCHY, Director